# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| TAMMY BUFFORD, individually and as Administrator of the Estate of Cortez D. Bufford, )<br><br>and, )<br><br>ANTOINE BUFFORD, )<br><br>       Plaintiffs, )<br><br>    v. )<br><br>CITY OF ST. LOUIS, MISSOURI, )<br>    Serve: Mayor Tishaura Jones )<br>    1200 Market St. )<br>    Room 200 )<br>    St. Louis, MO 63103 )<br><br>and, )<br><br>LT. COL. MICHAEL SLACK, )<br>    In his capacity as the Commissioner )<br>    of the St. Louis City Police Dept. )<br>    Serve: The Police Legal Section )<br>    1915 Olive St. )<br>    St. Louis, MO 63103 )<br><br>and, )<br><br>POLICE OFFICER LUCAS ROETHLISBERGER, )<br>    Serve: The Police Legal Section )<br>    1915 Olive St. )<br>    St. Louis, MO 63103 )<br><br>and, )<br><br>POLICE OFFICER MARTINOUS WALLS, )<br>    Serve: The Police Legal Section )<br>    1915 Olive St. )<br>    St. Louis, MO 63103 )<br><br>       Defendants. )</code> | Cause No.:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COME NOW Plaintiffs, Tammy Bufford and Antoine Bufford, by and through their counsel of Sivia Law, and hereby state the following in support of their Complaint against Defendants, City of St. Louis, Missouri, Police Chief Michael Slack, Police Officer Lucas Roethlisberger, and Police Officer Martinous Walls:

## INTRODUCTION

This is a civil action filed pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth Amendment to the United States Constitution, as made applicable to the States through the Fourteenth Amendment, and the Eighth Amendment. This action is also filed pursuant to section 537.080 et seq. R.S.Mo. (1979), which is commonly referred to as the state of Missouri's Wrongful Death Statute, and section 537.020 et seq. R.S.Mo. (1979), which is commonly referred to as the state of Missouri's Survival Action Statute. The Court can and should exercise supplemental jurisdiction over these claims, pursuant to 28 U.S.C. § 1367, as they are so related to the other claims in the action already under the Court's original jurisdiction, pursuant to 28 U.S.C. § 1331, and form part of the same case or controversy under Article 3 of the United States Constitution.

Plaintiffs, Tammy Bufford and Antoine Bufford (hereinafter "Plaintiffs") are the surviving natural parents of Cortez Demarko Bufford (hereinafter "Cortez"). Plaintiffs are the only members of the wrongful death class eligible to advance this suit. Cortez was an unarmed, twenty-four-year-old, African American male who sustained fatal gunshot wounds to the head, back, thigh, and both cheeks on December 12, 2019. Defendant Martinous Walls (hereinafter "Defendant Walls" or "Walls") attempted to run over Cortez while Cortez was fleeing, using an unnecessary and unreasonable amount of force in violation of Cortez's constitutionally guaranteed right to life. Defendant Lucas Roethlisberger (hereinafter "Defendant Roethlisberger" or "Roethlisberger")

unjustifiably shot and killed Cortez, using an unnecessary and unreasonable amount of force in violation of Cortez's constitutionally guaranteed right to life. Defendants Roethlisberger and Walls were employed by Defendant City of St. Louis, Missouri (hereinafter "Defendant City" or "STLPD") at the time that he shot and killed unarmed twenty-four-year-old Cortez.

The Police Chief maintained general supervision of Defendants Roethlisberger and Walls, and was also responsible for hiring, training, and retention, along with Defendant City. The office of Police Chief was held by John Hayden during the events described herein and is now occupied by Defendant Michael Slack. Acting under color of law, Defendants Roethlisberger and Walls deprived Cortez of his well-established civil rights protected both by the United States Constitution and the state of Missouri Constitution. Plaintiffs seek compensatory and exemplary damages, declaratory and injunctive relief, and attorney's fees and costs, in addition to any other relief this Honorable Court deems just and proper under the circumstances.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs are the natural parents of decedent Cortez who, along with Cortez, at all times relevant herein resided in St. Louis City, Missouri. Plaintiffs are the proper parties to bring this action for the wrongful death of their son, Cortez, pursuant to R.S.Mo. §§ 537.020.1 and 537.080.1(1).

2.     Defendant City at all times relevant herein was a duly chartered municipality of Missouri. The St. Louis Metropolitan Police Department is an official division of Defendant City. At all relevant times herein, Defendant City employed John Hayden, and Defendants Roethlisberger, and Walls, including at the time Defendant Roethlisberger shot and killed Cortez.

3.     Defendant Slack is being sued in his official capacity as Police Commissioner. At all times relevant herein, his predecessor John Hayden, was acting within the course and scope of

his employment with Defendant City and was acting under color of law as the supervisor of Defendant City's police officers, including Defendants Roethlisberger and Walls. The Defendant Police Commissioner, as noted above, was responsible for and had express and implied authority to make policies for Defendant City and also had the authority to hire, train, supervise, discipline, and effect the retention determination(s) in regard to Defendant City's law enforcement officers. Further, Defendant Slack is a resident of Missouri.

4.     Defendant Roethlisberger is being sued in both his individual and official capacities. Defendant Roethlisberger at all times relevant herein was acting within the course and scope of his employment with Defendant City and was acting under color of law. Further, Defendant Walls is a resident of Missouri.

5.     Defendant Walls is being sued in both his individual and official capacities. Defendant Walls at all times relevant herein was acting within the course and scope of his employment with Defendant City and was acting under color of law. Further, Defendant Walls is a resident of Missouri.

6.     Venue is proper in this judicial circuit because all acts or omissions complained of occurred within the Eastern District of Missouri, 28 U.S.C. § 1391(b)(2), each of the named Defendants reside or resides in this judicial district, 28 U.S.C. § 1391(b)(1), and subject thereto, because this Court, otherwise, has jurisdiction over at least one defendant in this lawsuit, 28 U.S.C. § 1391(b)(3). Venue is also proper pursuant to the Article III of the United States Constitution.

7.     This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

**FACTUAL ALLEGATIONS TO ALL COUNTS**

8.      On April 10, 2014, Officer Burkemper with the St. Louis City Police Department pulled over Cortez after he made a legal U-Turn while driving on Lafayette Avenue at approximately 14th Street.

9.      Officer Burkemper then pulled Cortez out of the car, and eventually eight (8) St. Louis City Police Officers started assaulting Cortez.

10.     At one point during this beating, an Officer is recorded as saying to the other Officers that they are "hot", indicating that the assault of Cortez was being recorded.

11.     Cortez incurred six thousand four hundred thirty-nine dollars and 32/100 dollars ($6,439.32) in medical bills because of the beating he received.

12.     Cortez then filed a lawsuit against Officer Burkemper and other St. Louis City Police Officers, case number 1522-CC00152.

13.     After the case was removed to federal court, Cortez and the City of St. Louis ultimately settled the matter.

14.     On December 12, 2019, Cortez and his friend Terrell Phillips (hereinafter "Phillips") pulled up to the BP gas station located at 504 Bates Street, St. Louis, Missouri 63111 (hereinafter "BP").

15.     Across the street, Officers from St. Louis City were sitting in the parking lot of a business.

16.     Cortez went inside the BP and purchased cigarettes and a drink.

17.     In the security footage from the BP, there is surveillance video that shows Cortez and his "man bag" as is later called by St. Louis City Police Officers. St. Louis City Police Officers later claim that the gun was clearly visible in his "man bag", however, in the video from the BP gas station, the bag is visible, but no gun is visible from the security footage obtained.

18.     Immediately after Cortez paid for his items, he walked to the side of the building and stood there, upon information and belief, to smoke a cigarette.

19.     While smoking this cigarette, a vehicle pulls up behind Cortez and a man yells, "Put your junk away".

20.     The person who yelled at Cortez was Defendant Roethlisberger, and Defendant Roethlisberger was a passenger in a St. Louis City Police car or SUV that was stopped behind Cortez.

21.     Defendant Roethlisberger opened his door and exited the St. Louis City Police SUV and started to run at Cortez, without identifying himself or making any other statements.

22.     Defendant Roethlisberger purported to conduct a "pedestrian check" without sufficient legal basis.

23.     Cortez, without hearing any commands such as "stop", "I'm a police officer", or otherwise, responded to this unknown assailant by running.

24.     Defendant Roethlisberger drew his sidearm shortly thereafter, while running on foot after Cortez.

25.     Phillips yelled at Defendant Roethlisberger that he "better not shoot him", after which Defendant Roethlisberger holstered his sidearm.

26.     While fleeing his unknown and unidentified assailant, Cortez turned down an alleyway.

27.     When he stopped at a fence, Defendant Roethlisberger then grabbed Cortez in the alleyway. At this point, Defendant Roethlisberger still had not identified himself, had not given any commands to Cortez, had not asked him to stop or otherwise even identified himself as a police officer.

28.     There is no mention that Cortez possessed, drew or otherwise attempted to use a firearm during this confrontation.

29.     After this confrontation Cortez was able to escape his assailant.

30.     Cortez ran back towards the street, and while attempting to cross Bates Street, Defendant Walls, who was driving the St. Louis City Police Department SUV, struck Cortez.

31.     Upon information and belief, Cortez was struck by the drivers' side bumper of the St. Louis City Police SUV, a Chevrolet Tahoe, and was knocked down.

32.     At that point in time, an unidentified officer claim he could see that Cortez had a gun, and he then radioed that Cortez had a gun.

33.     After statements were provided, the driver of the SUV, and his passenger both claimed that they were able to see an extended magazine protruding from Cortez's "man bag".

34.     From subsequent investigations, this is proven to be false, as the person that was driving the SUV would have had to hit Cortez with the Tahoe, and Cortez would have suffered significant injuries from this collision to place his body in a position for the driver to be able to see a gun protruding from his "man bag", in short, he couldn't have seen Cortez, or whether Cortez had a gun[1].

35.     Further, with the vehicle being a Tahoe, and the area of the damage to the SUV, it is unlikely that Defendant Walls could have seen Cortez at all after the impact[1].

36.     After being hit by Walls while driving the SUV, Cortez and ran down an alleyway, this one between 533 and 535 Bates Street.

---

[1] According to recreations of the Tahoe striking Cortez, he would have needed to be thrown 10 to 15 feet for Defendant Walls to have seen Cortez, or been able to identify that Cortez had a gun on him. The impact to the side of the SUV was miniscule, and based upon this report, Defendant Walls could not have seen a gun, or even Cortez, after he struck him with the SUV. https://www.riverfronttimes.com/stlouis/blood-moon-a-forensic-investigation-of-a-st-louis-police-killing/Content?oid=36940280&showFullText=true

37.     The alleyway between 533 and 535 Bates Street is dark, and subsequent studies have shown that when you approach the alleyway between the two homes, there is virtually no visibility and no way to see down this alleyway from the entrance[2].

38.     Defendant Roethlisberger pursued Cortez down the alleyway between 533 and 535 Bates Street and entered the alleyway.

39.     In his statement, Defendant Roethlisberger claims that he was at the mouth of the alleyway, but a picture of shell casings tells a different story, included here as Exhibit A.

40.     Defendant Walls' statement also refutes this statement by Roethlisberger, because when he arrived on scene, he did not observe Roethlisberger at the mouth of the alleyway.

41.     After Cortez went down the alleyway, Defendant Roethlisberger entered the alleyway, and after entering the alleyway to pursue Cortez, he claims he was able to see a black pistol, allegedly held by Cortez and pointed at him by Cortez, despite the fact that there was no light in that alleyway.

42.     A further study conducted by Alison Flowers, determined that there was no light at the time of Cortez's shooting, and forensically, Defendant Roethlisberger could not have seen Cortez threaten him in the alleyway[3].

---

[2] A subsequent investigation was conducted to determine what the visibility was from the entryway to the end of the alleyway between 533 and 535 Bates Street. This study concluded that there was no way someone could accurately see that a subject was holding a firearm pointed at them from the back of the alleyway, a silhouette of a person could have been seen, but these studies confirm that there was no way to identify that someone was threatening them. https://www.riverfronttimes.com/stlouis/blood-moon-a-forensic-investigation-of-a-st-louis-police-killing/Content?oid=36940280

[3] A subsequent investigation was conducted to determine what the visibility was from the entryway to the end of the alleyway between 533 and 535 Bates Street. This study concluded that there was no way someone could see down the alleyway, the porchlight from the building at the entrance of the alleyway would have obscured their vision further and these factors would have ensured that no one could observe that someone had a black firearm pointed at them from the back of the alleyway. https://www.riverfronttimes.com/stlouis/blood-moon-a-forensic-investigation-of-a-st-louis-police-killing/Content?oid=36940280

43. Defendant Roethlisberger then fired his sidearm twice, and Exhibit A shows two shell casings close together that fell furthest from where Cortez's body fell.

44. A 911 caller confirms that there were two shots, and then a pause as well.

45. The shell casings in Exhibit A confirm that Defendant Roethlisberger then walked down the alleyway firing approximately nine (9) shots.

46. There were two shots that struck Cortez in the back, the remaining shots struck him in the front, with multiple shots to his face, in an alleyway that was proven had no visibility, let alone visibility to make multiple "kill shots" to the face.

47. These facts demonstrate that Defendant Roethlisberger walked into the alleyway, and then continued to approach Cortez as he fired his sidearm, and he was not fleeing as he said in his statement.

48. Defendant did not fear for his life, he was the aggressor in this situation.

49. Cortez had many injuries from the bullets fired from Officer Roethlisberger, including the following;

      a. Cortez's finger was shot and severed, with no injury to the gun, this injury can only occur if Cortez has his hands off of any alleged gun at the time he was struck;

      b. Cortez has an apparent exit wound on the front of his upper thigh, indicating that he is struck from behind by Officer Roethlisberger's bullet in the back; and

      c. Cortez had no blood on his right hand; however, there was blood all over where his right hand would have been holding the gun he allegedly pulled on Defendant Roethlisberger.

50.     After Cortez was shot, there is video of Defendant Roethlisberger and another Officer from the St. Louis City Police Department throwing a heavy object between them.

51.     A pistol is found and photographed that is covered in blood, but the blood appears smeared all over the pistol, including on top of the chamber, and also on bullets within the magazine of the pistol, this indicates that the gun was not chambered at the time it was covered with blood.

52.     Cortez's finger is shot off by Roethlisberger, however, there is no damage to the pistol, this indicates that Cortez was not holding the pistol when his hand was shot by Defendant Roethlisberger.

53.     The gun recovered was not registered to Cortez, nor were any fingerprints of Cortez's lifted from the gun or rounds in the magazine, despite Cortez being barehanded and not wearing any gloves at the time of the incident. There was no lineage ever discovered between Cortez and the gun recovered.

54.     The gun was supposed to be loaded and in a firing position according to the Officer that fired the shot to kill Cortez, however there are problems with this theory[4]:

   a. There was blood found on the back of the magazine, had the magazine been inserted into the gun, blood could not have been found at the back of the magazine;

   b. There was blood found on the top of a bullet, had the gun been ready to shoot, there should be no blood on the bullets and the gun should have been closed if Defendant Roethlisberger's statements been accurate;

---

[4] Reports indicate that the gun was stolen, but the Glock was not part of these reports. The Glock was reported stolen, but the report was not properly made for this gun. There are also questions about the timeliness of this report, and other discrepancies in the record of this case concerning this gun.

    c.   Cortez's bag was too small to conceal (and the BP videos confirm this) a full-sized gun with an extended magazine; and

    d.   Carrying a gun in Missouri is not a crime as Constitutional Carry is the law of the land, and therefore, had Officers suspected that Cortez was carrying a gun, they are legally prohibited from pursing Cortez for these concerns.

55.    Cortez did not have any blood on his hands, but there was blood on the gun.

56.    The lack of blood on Cortez's hands, but blood on the gun indicates that the blood was either placed or smeared on the gun after Cortez was shot.

**COUNT I**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1983 AND 1988 – EXCESSIVE FORCE**
**(Defendant Roethlisberger)**

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count I, Violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983 and 1988 – Excessive Force, against Defendant Roethlisberger, state as follows:

57.    Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

58.    This count is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988, alleging violations of due process and use of excessive force.

59.    This action is brought against Defendant Roethlisberger in his personal capacity.

60.    The actions of Defendant Roethlisberger and Defendant Walls as described above violated and deprived Cortez of his clearly established and well-settled civil rights to be free from

unlawful detention and the use of excessive and deadly force, as well as the deprivation of liberty without due process of law and equal protection of law.

61.     The death of Cortez was directly and proximately caused by the aforementioned violations and deprivation of his constitutional rights by Defendant Roethlisberger, as Defendant Roethlisberger and Walls unlawfully detained and then Defendant Roethlisberger used deadly force against Cortez when it was blatantly unwarranted and unjustified to do so.

62.     As a direct and proximate result of the violations and deprivation of his rights, Cortez suffered severe, painful, and fatal injuries.

63.     As a direct and proximate result of these actions, Plaintiffs lost the love, care, companionship, comfort, guidance, services, and support of Cortez.

64.     As a direct and proximate result of the injuries to Cortez, Plaintiffs have become obligated for necessary funeral and burial expenses.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant Police Officer Lucas Roethlisberger, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT II**
**WRONGFUL DEATH ACTION**
**(Defendant Roethlisberger)**

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count II, Wrongful Death Action, against Defendant Roethlisberger, state as follows:

65.    Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

66.    Plaintiffs, Tammy and Antoine Bufford, parents of Decedent Cortez Bufford, bring this action pursuant to RSMo § 537.080.1(1).

67.    This Count is being brought against Defendant Roethlisberger in his individual capacity and pursuant to Mo. Rev. Stat. § 537.080, et. seq.

68.    At all times material hereto, Defendant Roethlisberger was an employee of Defendant City and acting within the course and scope of his employment with same, as well as acting under color of law.

69.     Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.

70.     Defendant Roethlisberger deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.

71.     Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.

72.     Defendant Roethlisberger acted with deliberate indifference to the constitutional rights of Decedent Cortez and Plaintiffs without any legitimate law enforcement objective.

73.     As a direct and proximate result of said Defendant Roethlisberger's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives.

74.     Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

75.     Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant Police Officer Lucas Roethlisberger, pursuant to the Missouri Constitution, state statutes, the United States

Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

    (a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

    (b) Punitive damages, as may be applicable;

    (c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

    (d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

    (e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

    (f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT III**
**SURVIVAL ACTION**
**(Defendant Roethlisberger)**

COMES NOW Plaintiff, Tammy Bufford, as Administrator for the Estate of Cortez D. Bufford, by and through her undersigned counsel, and for her Count III, Survival Action, against Defendant Roethlisberger, states as follows:

76.     Plaintiff adopts and incorporates paragraphs one (1) through fifty-six (56) as if fully set forth herein.

77.     This Count is being brought against Defendant Roethlisberger in his individual capacity and pursuant to Mo. Rev. Stat. § 537.020, et. seq.

78.     At all times material hereto, Defendant Roethlisberger was an employee of Defendant City and acting within the course and scope of his employment with same, as well as acting under color of law.

79.     Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.

80.     Defendant Roethlisberger deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.

81.     Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.

82.     Defendant Roethlisberger acted with deliberate indifference to the constitutional rights of decedent and Plaintiffs without any legitimate law enforcement objective.

83.     As a direct and proximate result of said Defendant Roethlisberger's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

84.     Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

85.     Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

WHEREFORE, Plaintiff, Tammy Bufford, as Administrator for the Estate of Cortez D. Bufford, respectfully requests that this Court award damages, jointly and severally, against Defendant Police Officer Lucas Roethlisberger, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a)  Damages for the injury to Decedent Cortez Bufford's person;

(b)  Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(c)  Punitive damages, as may be applicable;

(d)  Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(e)  Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(f)  An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(g)  An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court

determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT IV**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATED CONSTITUTION AND 42 U.S.C. §§ 1983 AND 1988 – EXCESSIVE FORCE**
**(Defendant Walls)**

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count IV, Violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983 and 1988 – Excessive Force, against Defendant Walls, state as follows:

86.     Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

87.     This count is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988, alleging violations of due process and use of excessive force.

88.     This action is brought against Defendant Walls in his personal capacity.

89.     The actions of Defendant Roethlisberger and Defendant Walls as described above violated and deprived Cortez of his clearly established and well-settled civil rights to be free from unlawful detention and the use of excessive and deadly force, as well as the deprivation of liberty without due process of law and equal protection of law.

90.     The death of Cortez was directly and proximately caused by the aforementioned violations and deprivation of his constitutional rights by Defendant Roethlisberger, as Defendant Roethlisberger and Walls unlawfully detained and then Defendant Roethlisberger used deadly force against Cortez when it was blatantly unwarranted and unjustified to do so.

91.     As a direct and proximate result of the violations and deprivation of his rights, Cortez suffered severe, painful, and fatal injuries.

92.     As a direct and proximate result of these actions, Plaintiffs lost the love, care, companionship, comfort, guidance, services, and support of Cortez.

93.     As a direct and proximate result of the injuries to Cortez, Plaintiffs have become obligated for necessary funeral and burial expenses.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant Police Officer Martinous Walls, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

## COUNT V
## WRONGFUL DEATH ACTION
### (Defendant Walls)

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count V, Wrongful Death Action, against Defendant Walls, state as follows:

94.     Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

95.     Plaintiffs, Tammy and Antoine Bufford, parents of Decedent Cortez Bufford, bring this action pursuant to RSMo § 537.080.1(1).

96.     This Count is being brought against Defendant Walls in his individual capacity and pursuant to Mo. Rev. Stat. § 537.080, et. seq.

97.     At all times material hereto, Defendant Walls was an employee of Defendant City and acting within the course and scope of his employment with same, as well as acting under color of law.

98.     Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.

99.     Defendant Walls deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.

100.    Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.

101.    Defendant Walls, as partner to Defendant Roethlisberger, and as a police officer on site and present while Defendant Roethlisberger fired shots at Cortez, had a duty to intervene to prevent Defendant Roethlisberger from depriving Cortez of his rights.

102.    Further, Defendant Walls struck Cortez with his St. Louis City Police SUV, a Chevrolet Tahoe, which may have contributed to Cortez's injuries and contributed to his death.

103.    Defendant Walls acted with deliberate indifference to the constitutional rights of decedent and Plaintiffs without any legitimate law enforcement objective.

104.    As a direct and proximate result of said Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

105.    Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

106.    Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant Police Officer Martinous Walls, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT VI**
**SURVIVAL ACTION**
**(Defendant Walls)**

COMES NOW Plaintiff, Tammy Bufford, as Administrator for the Estate of Cortez D. Bufford, by and through her undersigned counsel, and for her Count VI, Survival Action, against Defendant Walls, states as follows:

107.    Plaintiff adopts and incorporates paragraphs one (1) through fifty-six (56) as if fully set forth herein.

108.    This Count is being brought against Defendant Walls in his individual capacity and pursuant to Mo. Rev. Stat. § 537.020, et. seq.

109.    At all times material hereto, Defendant Walls was an employee of Defendant City and acting within the course and scope of his employment with same, as well as acting under color of law.

110.    Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.

111.    Defendant Walls deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.

112.    Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.

113.    Defendant Walls, as partner to Defendant Roethlisberger, and as a police officer on site and present while Defendant Roethlisberger fired shots at Cortez, had a duty to intervene to prevent Defendant Roethlisberger from depriving Cortez of his rights.

114.    Further, Defendant Walls struck Cortez with his St. Louis City Police SUV, a Chevrolet Tahoe, which may have contributed to Cortez's injuries and contributed to his death.

115.    Defendant Walls acted with deliberate indifference to the constitutional rights of decedent and Plaintiffs without any legitimate law enforcement objective.

116.    As a direct and proximate result of said Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care,

and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

117.    Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

118.    Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

WHEREFORE, Plaintiff, Tammy Bufford, as Administrator for the Estate of Cortez D. Bufford, respectfully requests that this Court award damages, jointly and severally, against Defendant Police Officer Martinous Walls, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the injuries to Decedent Cortez Bufford's person;

(b) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(c) Punitive damages, as may be applicable;

(d) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(e) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(f) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(g) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT VII**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§1983 AND 1988 – EXCESSIVE FORCE**
**(Defendant City)**

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count VII, Violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983 and 1988 – Excessive Force, against Defendant City, state as follows:

119.    Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

120.    This count is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988, alleging violations of due process and use of excessive force.

121.    At all times relevant hereto, Defendant City operated a police department, which employed Defendants Roethlisberger and Walls.

122.    A police chief heads the Defendant City's police department.

123.    At the time of the events described herein, Colonel John W. Hayden, Jr. held the title and occupied the office of police chief.

124.    At the time of this filing, Lieutenant Colonel Michael Slack now holds the title and occupies the office of the police chief.

125.     The police chief has decision-making authority for the City of St. Louis police department.

126.     Upon information and belief, the police chief, Defendant Slack, in his individual and official capacity, with knowledge and deliberate indifference to and/or reckless disregard for the rights of the citizens of the City of St. Louis, has tolerated, permitted, failed to correct, promoted, or ratified a custom, pattern, and practice on the part of City of St. Louis police officers who engage in unjustified, unreasonable, and illegal use of excessive force, including deadly force.

127.     Defendant Slack knew or should have known that the inadequate training and supervision would result in the use of deadly force by Defendant Roethlisberger and others and that such inadequate training and supervision was substantially likely to result in other unauthorized, unconstitutional, and illegal actions against the citizens of St. Louis, Missouri, including Cortez.

128.     Defendant Slack has not formally introduced training or supervision policies to eradicate similar instances of mistreatment, unlawful stop and/or detention, and unjustified use of deadly force.

129.     The wrongful death of Cortez was directly and proximately caused by the failures, negligence, and carelessness of Defendant Slack as set forth herein.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant City of St. Louis, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

## COUNT VIII
## VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1983 AND 1988 - FAILURE TO PROPERLY HIRE, TRAIN, SUPERVISE, RETAIN, AND CONDUCT A FAIR AND IMPARTIAL INVESTIGATION
### (Defendant City)

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count VIII, Violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983 and 1988 - Failure to Properly Hire, Train, Supervise, Retain, and Conduct a Fair and Impartial Investigation, against Defendant City, state as follows:

130.    Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

131.    At all times relevant hereto, Defendant City operated a police department, which employed Defendants Roethlisberger and Walls.

132.    A police chief heads the Defendant City's police department.

133.    At the time of the events described herein, Colonel John W. Hayden, Jr. held the title and occupied the office of police chief.

134.    At the time of this filing, Lieutenant Colonel Michael Slack now holds the title and occupies the office of the police chief.

135.    The police chief has decision-making authority for the City of St. Louis police department.

136.    Defendant City and Defendant Slack have a duty to provide responsible and effective operations of its police department.

137.    Defendants also have a duty to establish proper policies, customs, and regulations of the police department.

138.    Upon information and belief, prior to the death of Cortez, Defendants City and Slack had a custom or policy of negligently hiring and retaining officers, failing to properly train and/or supervise officers in the use of deadly force in areas of the city of St. Louis predominately populated by African-Americans, and in failing to conduct fair and impartial investigations.

139.    Upon information and belief, prior to the death of Cortez, Defendants City and Slack had a custom or policy of negligently failing to train or supervise officers regarding how to treat and properly serve in areas of the city of St. Louis predominately populated by African-Americans.

140.    Upon information and belief, prior to the death of Cortez, Defendants City and Slack had a custom or policy of negligently failing to train or supervise officers in cultural diversity in an effort to eliminate the potential of unjustified deadly force in areas of the city of St. Louis predominately populated by African-Americans.

141.    Upon information and belief, Defendants City and Slack have not formally amended its training and/or policies to eradicate similar instances of unjustified use of deadly force.

142.    The St. Louis Metropolitan Police Department is a large department featuring several subdivisions, including the Force Investigation Unit, identified as department 487.

143.    The Police Commissioner, Defendant Slack, oversees the entire St. Louis Metropolitan Police Department and all of its subdivisions.

144.    Defendant City and Defendant Slack, through the Force Investigation Unit or otherwise, failed to properly and fully investigate the use of force against and death of Decedent Cortez Bufford.

145.    Upon information and belief, Defendant City and Defendant Slack, through the Force Investigation Unit or otherwise, have a pattern and practice of not fully or properly investigating its officers during use of force investigations, especially for those incidents involving African-Americans on the receiving end of the force.

146.    The wrongful death of Cortez was directly and proximately caused by the failures, negligence, and carelessness of Defendants City and Slack because it produced or contributed to police officers' devaluation of African-American life in the city of St. Louis.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant City of St. Louis, pursuant to the

Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

## COUNT IX
## WRONGFUL DEATH ACTION
### (Defendant City)

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count IX, Wrongful Death Action, against Defendant City, state as follows:

147.    Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

148.    Plaintiffs, Tammy and Antoine Bufford, parents of Decedent Cortez Bufford, bring this action pursuant to RSMo § 537.080.1(1).

149.    This Count is being brought against Defendant City pursuant to Mo. Rev. Stat. § 537.080, et. seq.

150.    At all times material hereto, Defendants Roethlisberger and Walls were employees of Defendant City's police department and acting within the course and scope of their employment with same, as well as acting under color of law.

151.    Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.

152.    Defendants Roethlisberger and Walls deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.

153.    Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.

154.    Defendants Roethlisberger and Walls acted with deliberate indifference to the constitutional rights of Decedent and Plaintiffs without any legitimate law enforcement objective.

155.    As a direct and proximate result of said Defendant Roethlisberger's and Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love,

companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

156.   Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

157.   Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

158.   Defendant City is vicariously liable for the wrongs of its employees committed within the course and scope of their employment.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant City of St. Louis, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT X**
**SURVIVAL ACTION**
**(Defendant City)**

COMES NOW Plaintiff, Tammy Bufford, as Administrator of the Estate of Cortez D. Bufford, by and through her undersigned counsel, and for her Count X, Survival Action, against Defendant City, state as follows:

159.    Plaintiff adopts and incorporates paragraphs one (1) through fifty-six (56) as if fully set forth herein.

160.    This Count is being brought against Defendant City pursuant to Mo. Rev. Stat. § 537.020, et. seq.

161.    At all times material hereto, Defendant Roethlisberger and Defendant Walls were employees of Defendant City's police department and acting within the course and scope of their employment with same, as well as acting under color of law.

162.    Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.

163.    Defendant Roethlisberger and Defendant Walls deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.

164.    Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.

165.    Defendant Roethlisberger and Defendant Walls acted with deliberate indifference to the constitutional rights of Decedent and Plaintiffs without any legitimate law enforcement objective.

166.    As a direct and proximate result of said Defendant Roethlisberger's and Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

167.    Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

168.    Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

169.    Defendant City is vicariously liable for the wrongs of its employees committed within the course and scope of their employment.

WHEREFORE, Plaintiff, Tammy Bufford, as Administrator for the Estate of Cortez D. Bufford, respectfully requests that this Court award damages, jointly and severally, against Defendant City of St. Louis, pursuant to the Missouri Constitution, state statutes, the United States

Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

    (a)  Damages for the injuries to Decedent Cortez Bufford's person;

    (b)  Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

    (c)  Punitive damages, as may be applicable;

    (d)  Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

    (e)  Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

    (f)  An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

    (g)  An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT XI**
**NEGLIGENCE**
**(Defendant City)**

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count XI, Negligence, against Defendant City, state as follows:

170.     Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

171.     This Count is being brought against Defendant City pursuant to Mo. Rev. Stat. §§ 537.020, 537.030, and 537.600.

172.     At all times material hereto, Defendant Roethlisberger and Defendant Walls were employees of Defendant City and acting within the course and scope of their employment with same, as well as acting under color of law.

173.     Defendant City is vicariously liable for the wrongs of its employees committed within the course and scope of their employment.

174.     Defendant City does not enjoy sovereign immunity against suits where its employees' negligent acts or omissions, arising out of the operation of motor vehicles or motorized vehicles within the course of their employment, directly cause injuries to an individual. See RSMO § 537.600.

175.     On the night of December 12, 2019, Defendant Walls struck Cortez with the motor vehicle he was operating, a St. Louis City Police SUV, a Chevrolet Tahoe.

176.     Cortez suffered injuries as a result of Defendant Walls's operation of the motor vehicle.

177.     As a direct and proximate result of said Defendant Walls's acts, omissions, and/or deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

178.     Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

179.     Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant City of St. Louis, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court

determines that the City of St. Louis has fully and effectually trained all of its police

officers on the constitutional requirements of the use of deadly force.

**COUNT XII**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1983 AND 1988 – EXCESSIVE**
**FORCE**
**(Defendant Slack)**

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned

counsel, and for their Count XII, Violation of the Fourth and Fourteenth Amendments of the

United States Constitution and 42 U.S.C. §§ 1983 and 1988 – Excessive Force, against Defendant

Slack, state as follows:

180.    Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully

set forth herein.

181.    This count is brought pursuant to the Fourth and Fourteenth Amendments to the

United States Constitution and 42 U.S.C. §§ 1983 and 1988, alleging violations of due process and

use of excessive force.

182.    This action is brought against Defendant Slack in his official capacity as

Commissioner of the St. Louis Metropolitan Police Department.

183.    At all times relevant hereto, Defendant City operated a police department, which

employed Defendants Roethlisberger and Walls.

184.    A police chief heads the Defendant City's police department.

185.    At the time of the events described herein, Colonel John W. Hayden, Jr. held the

title and occupied the office of police chief.

186.    At the time of this filing, Lieutenant Colonel Michael Slack now holds the title and

occupies the office of the police chief.

187.    The police chief has decision-making authority for the City of St. Louis police department.

188.    Upon information and belief, Defendant Slack, in his individual and official capacity, with knowledge and deliberate indifference to and/or reckless disregard for the rights of the citizens of the city of St. Louis, has tolerated, permitted, failed to correct, promoted, or ratified a custom, pattern, and practice on the part of city of St. Louis police officers who engage in unjustified, unreasonable, and illegal use of excessive force, including deadly force.

189.    Defendant Slack knew or should have known that the inadequate training and supervision would result in the use of deadly force by Defendant Roethlisberger and others and that such inadequate training and supervision was substantially likely to result in other unauthorized, unconstitutional, and illegal actions against the citizens of St. Louis, Missouri, including Cortez.

190.    Defendant City and Defendant Slack should be well aware of the inadequacies of its department training and supervision, given the numerous incidents of police violence and excessive force used against the African-American members of the community, including, but not limited to, the nationwide scrutiny received in the wake of the police killing of Michael Brown.

191.    Defendant Slack has not formally introduced training or supervision policies to eradicate similar instances of mistreatment, unlawful stop and/or detention, and unjustified use of deadly force.

192.    The wrongful death of Cortez was directly and proximately caused by the failures, negligence, and carelessness of Defendant Slack as set forth herein.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant Police Chief Michael Slack,

pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT XIII**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. §§ 1983 AND 1988 - FAILURE TO PROPERLY HIRE, TRAIN, SUPERVISE, RETAIN, AND CONDUCT A FAIR AND IMPARTIAL INVESTIGATION**
**(Defendant Slack)**

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count XIII, Violation of the Fourth and Fourteenth Amendments of the

United States Constitution and 42 U.S.C. §§ 1983 and 1988 - Failure to Properly Hire, Train, Supervise, Retain, and Conduct a Fair and Impartial Investigation, against Defendant Slack, state as follows:

193.     Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

194.     At all times relevant hereto, Defendant City operated a police department, which employed Defendants Roethlisberger and Walls.

195.     A police chief heads the Defendant City's police department.

196.     At the time of the events described herein, Colonel John W. Hayden, Jr. held the title and occupied the office of police chief.

197.     At the time of this filing, Lieutenant Colonel Michael Slack now holds the title and occupies the office of the police chief.

198.     The police chief has decision-making authority for the City of St. Louis police department.

199.     Defendant City and Defendant Slack have a duty to provide responsible and effective operations of its police department.

200.     Defendants also have a duty to establish proper policies, customs, and regulations of the police department.

201.     Upon information and belief, prior to the death of Cortez, Defendants City and Slack had a custom or policy of negligently hiring and retaining officers, failing to properly train and/or supervise officers in the use of deadly force in areas of the city of St. Louis predominately populated by African-Americans, and in failing to conduct fair and impartial investigations.

202.     Upon information and belief, prior to the death of Cortez, Defendants City and Slack had a custom or policy of negligently failing to train or supervise officers regarding how to treat and properly serve in areas of the city of St. Louis predominately populated by African-Americans.

203.     Upon information and belief, prior to the death of Cortez, Defendants City and Slack had a custom or policy of negligently failing to train or supervise officers in cultural diversity in an effort to eliminate the potential of unjustified deadly force in areas of the city of St. Louis predominately populated by African-Americans.

204.     Defendant City and Defendant Slack should be well aware of the inadequacies of its department training and supervision, given the numerous incidents of police violence and excessive force used against the African-American members of the community, including, but not limited to, the nationwide scrutiny received in the wake of Defendant City's police officers shooting and killing Michael Brown.

205.     Upon information and belief, Defendants City and Slack have not formally amended its training and/or policies to eradicate similar instances of unjustified use of deadly force.

206.     The St. Louis Metropolitan Police Department is a large department featuring several subdivisions, including the Force Investigation Unit, identified as department 487.

207.     The Police Commissioner, Defendant Slack, oversees the entire St. Louis Metropolitan Police Department and all of its subdivisions.

208.     Defendant Slack, through the Force Investigation Unit or otherwise, failed to properly and fully investigate the use of force against and death of Decedent Cortez Bufford.

209.     Upon information and belief, Defendant Slack, and the Force Investigation Unit, have a pattern and practice of not fully or properly investigating its officers during use of force investigations, especially for those incidents involving African-Americans on the receiving end of the force.

210.     The wrongful death of Cortez was directly and proximately caused by the failures, negligence, and carelessness of Defendants City and Slack because it produced or contributed to police officers' devaluation of African-American life in the city of St. Louis.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant Police Chief Michael Slack, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT XIV**
**WRONGFUL DEATH ACTION**
**(Defendant Slack)**

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count XIV, Wrongful Death Action, against Defendant Slack, state as follows:

211.    Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

212.    Plaintiffs, Tammy and Antoine Bufford, parents of Decedent Cortez Bufford, bring this action pursuant to RSMo § 537.080.1(1).

213.    This Count is being brought against Defendant Slack pursuant to Mo. Rev. Stat. § 537.080, et. seq.

214.    At all times material hereto, Defendants Roethlisberger and Walls were employees of Defendant City's police department and acting within the course and scope of his employment with same, as well as acting under color of law.

215.    At all times material hereto, Defendants Roethlisberger and Walls were subject to the training by and supervision of the police chief.

216.    Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from

state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.

217.    Defendants Roethlisberger and Walls deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.

218.    Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.

219.    Defendant Roethlisberger and Walls acted with deliberate indifference to the constitutional rights of decedent and Plaintiffs without any legitimate law enforcement objective.

220.    As a direct and proximate result of said Defendant Roethlisberger's and Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

221.    Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

222.    Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

223.    Defendant Slack, as police chief for the City of St. Louis police department, had authority over Defendants Roethlisberger and Walls, and is vicariously liable for the acts they committed within the course and scope of their employment.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant Police Chief Michael Slack, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal

statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

**COUNT XV**
**SURVIVAL ACTION**
**(Defendant Slack)**

COMES NOW Plaintiff, Tammy Bufford, as Administrator of the Estate of Cortez D. Bufford, by and through her undersigned counsel, and for her Count XV, Survival Action, against Defendant Slack, state as follows:

224.    Plaintiff adopts and incorporates paragraphs one (1) through fifty-six (56) as if fully set forth herein.

225.    This Count is being brought against Defendant Slack pursuant to Mo. Rev. Stat. § 537.020, et. seq.

226.    At all times material hereto, Defendants Roethlisberger and Walls were employees of Defendant City and acting within the course and scope of their employment with same, as well as acting under color of law.

227.    Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.

228.    Defendant Roethlisberger and Defendant Walls deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.

229.    Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.

230.    Defendant Roethlisberger and Defendant Walls acted with deliberate indifference to the constitutional rights of decedent and Plaintiffs without any legitimate law enforcement objective.

231.    As a direct and proximate result of said Defendant Roethlisberger's and Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love,

companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

232.    Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

233.    Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

234.    Defendant Slack, as police chief, is vicariously liable for the acts committed by City of St. Louis police officers for acts committed within the course and scope of their employment.

WHEREFORE, Plaintiff, Tammy Bufford, as Administrator of the Estate of Cortez D. Bufford, respectfully requests that this Court award damages, jointly and severally, against Defendant Police Chief Michael Slack, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for injuries to the person of Decedent Cortez Bufford;

(b) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(c) Punitive damages, as may be applicable;

(d) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(e) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(f)   An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(g)   An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

## COUNT XVI
## NEGLIGENCE
### (Defendant Slack)

COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count XI, Negligence, against Defendant Slack, state as follows:

235.   Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.

236.   This Count is being brought against Defendant Slack pursuant to Mo. Rev. Stat. §§ 537.020, 537.030, and 537.600.

237.   At all times relevant hereto, Defendant City operated a police department, which employed Defendants Roethlisberger and Walls.

238.   A police chief heads the Defendant City's police department.

239.   At the time of the events described herein, Colonel John W. Hayden, Jr. held the title and occupied the office of police chief.

240.   At the time of this filing, Lieutenant Colonel Michael Slack now holds the title and occupies the office of the police chief.

241.    The police chief has decision-making authority for the City of St. Louis police department.

242.    At all times material hereto, Defendant Walls was an employee of Defendant City of St. Louis Police Department and was acting within the course and scope of his employment with same, as well as acting under color of law.

243.    At all times relevant hereto, the City of St. Louis Police Department was headed by a chief of police, which office Defendant Slack now holds.

244.    On the night of December 12, 2019, Defendant Walls struck Cortez with the motor vehicle he was operating on information and belief to be a Chevrolet Tahoe.

245.    Cortez suffered injuries as a result of Defendant Walls' operation of the motor vehicle.

246.    Defendant Walls acted with deliberate indifference to the constitutional rights of decedent and Plaintiffs without any legitimate law enforcement objective.

247.    As a direct and proximate result of said Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.

248.    Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.

249.    Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

250.    Defendant Slack is liable for the acts of Defendants Roethlisberger and Walls.

WHEREFORE, Plaintiffs, Tammy and Antoine Bufford, respectfully request that this Court award damages, jointly and severally, against Defendant Police Chief Michael Slack, pursuant to the Missouri Constitution, state statutes, the United States Constitution, and federal statutes, and any and all other and further relief as this Court may deem just and proper, including but not limited to the following:

(a) Damages for the loss of love, companionship, affection, care, society, future support, and conscious pain and suffering;

(b) Punitive damages, as may be applicable;

(c) Compensatory damages, including medical treatment for psychological damages, in an amount in excess of seventy-five thousand dollars ($75,000.00), together with post judgment interest and costs;

(d) Award reasonable attorney's fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 1988;

(e) An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(f) An Order appointing a compliance monitor over the City of St. Louis's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of St. Louis has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

Respectfully submitted,

TAMMY BUFFORD and
ANTOINE BUFFORD


By: /s/Paul A. Marks
     Paul A. Marks, #6271319(IL)
     Sivia Law
     217 S. Main Street
     Edwardsville, IL 62025
     P | (618) 659-4499
     F | (855) 319-7816
     E | pleadings@sivialaw.com
     *Attorneys for Plaintiffs*

Complaint

Exhibit A









