UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TAMMY BUFFORD and ANTOINE BUFFORD, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 4:22-CV-01319-NCC ) |
| CITY OF ST. LOUIS, MISSOURI, LT. COL. MICHAEL SACK, POLICE OFFICER LUCAS ROETHLISBERGER, and POLICE OFFICER MARTINOUS WALLS, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Martinous Walls' Motion for Judgment on the Pleadings on Count V (Doc. 22). The Motion is fully briefed and ready for disposition (Docs. 23, 27, 30). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 17). For the following reasons, the Motion will be **DENIED**.

### I. Background

On December 8, 2022, Plaintiffs Tammy Bufford and Antoine Bufford ("Plaintiffs") filed this action against Defendants City of St. Louis, Missouri ("City"), Police Commissioner Michael Sack ("Commissioner Sack") in his official capacity,[1] Police Officer Lucas Roethlisberger ("Officer Roethlisberger") in his individual and official capacities, and Police Officer Martinous Walls ("Officer Walls") in his individual and official capacities, related to the death of their son Cortez Demarko Bufford ("Cortez") (Doc. 1).

---

[1] His predecessor John Hayden was Commissioner at the time of Cortez's death.

In summary, Plaintiffs' Complaint alleges as follows.  Cortez previously settled a claim against the City related to an assault by eight police officers on April 10, 2014 (Doc. 1 at 5).  On December 12, 2019, Cortez, a 24-year-old African American male, was at a BP gas station, 504 Bates Street, with a friend (*id.* at 2, 5).  BP security footage shows no gun is visible in Cortez's bag (*id.* at 5).  Cortez was smoking a cigarette at the side of the gas station when a St. Louis City Police Chevy Tahoe SUV ("SUV") pulled up, driven by Officer Walls, with Officer Roethlisberger as a passenger (*id.* at 6-7).  Officer Roethlisberger yelled "Put your junk away," exited the SUV, and started to run at Cortez (*id.* at 6).  Officer Roethlisberger did not identify himself or tell Cortez to stop (*id.* at 6).  Cortez ran (*id.*).  Officer Roethlisberger ran after Cortez and drew his sidearm (*id.*).  Cortez's friend yelled that Officer Roethlisberger "better not shoot him" and Officer Roethlisberger holstered his sidearm (*id.*).  Cortez turned down an alleyway and stopped at a fence (*id.*).  Officer Roethlisberger grabbed him (he still had not identified himself or told Cortez to stop) (*id.*).  Cortez managed to escape (*id.* at 7).

Cortez ran back toward the street (*id.*).  As he tried to cross Bates Street, Officer Walls hit him with the driver's side bumper of the SUV and knocked him down (*id.*).  An unidentified officer who was a passenger radioed that Cortez had a gun (*id.*).  Officer Walls and the unidentified officer claimed in their statements that they could see an extended magazine protruding from Cortez's bag, but subsequent investigations showed that would not have been possible for the driver, Officer Walls (*id.*).

After being hit, Cortez ran down another alleyway, between 533 and 535 Bates Street (*id.*).  Officer Roethlisberger claimed in his statement that he was at the mouth of the alleyway, but the shell casings show he pursued Cortez into the alleyway (*id.* at 8).  Officer Roethlisberger claimed that Cortez pointed a black pistol at him (*id.*).  Subsequent investigations showed that

2

Officer Roethlisberger could not have seen Cortez threaten him due to the lighting and visibility in the alleyway (*id.* at 8-9).

Officer Roethlisberger fired his sidearm twice, paused, and then walked down the alleyway firing approximately nine shots (*id.* at 9). Two shots struck Cortez in the back and the remaining shots struck him in the front, with multiple "kill shots" to the face (*id.*).

There is video of Officer Roethlisberger and another officer throwing a heavy object between them (*id.* at 10). A pistol was found covered in blood (*id.*). There was blood on the back of the magazine and on top of a bullet, indicating that the gun was not loaded and in firing position as Officer Roethlisberger had claimed (*id.*). Cortez's finger was shot and severed with no damage to the gun (*id.* at 9-10). Cortez had no blood on his hands, indicating that the blood was smeared on the pistol after Cortez was shot (*id.* at 9, 11). The gun was not registered to Cortez and his fingerprints were not lifted from it (*id.* at 10). And Cortez's bag was too small to conceal a full-sized gun with an extended magazine (*id.* at 11).

In Count V, Plaintiffs allege:

## COUNT V
## WRONGFUL DEATH ACTION
### (Defendant Walls)

     COME NOW Plaintiffs, Tammy and Antoine Bufford, by and through their undersigned counsel, and for their Count V, Wrongful Death Action, against Defendant Walls, state as follows:
     94. Plaintiffs adopt and incorporate paragraphs one (1) through fifty-six (56) as if fully set forth herein.
     95. Plaintiffs, Tammy and Antoine Bufford, parents of Decedent Cortez Bufford, bring this action pursuant to RSMo § 537.080.1(1).
     96. This Count is being brought against Defendant Walls in his individual capacity and pursuant to Mo. Rev. Stat. § 537.080, et. seq.
     97. At all times material hereto, Defendant Walls was an employee of Defendant City and acting within the course and scope of his employment with same, as well as acting under color of law.
     98. Plaintiffs Tammy and Antoine Bufford had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States

>Constitution in being free from state actions that cause unwarranted interference with their right to a familial relationship with Decedent, Cortez.
>    99. Defendant Walls deprived Plaintiffs of their right to a familial relationship with their son Cortez in a manner that shocked the conscience of the community.
>    100. Namely, when Cortez either was attempting to flee or attempting to surrender, Roethlisberger fired shots at him ultimately killing Cortez.
>    101. Defendant Walls, as partner to Defendant Roethlisberger, and as a police officer on site and present while Defendant Roethlisberger fired shots at Cortez, had a duty to intervene to prevent Defendant Roethlisberger from depriving Cortez of his rights.
>    102. Further, Defendant Walls struck Cortez with his St. Louis City Police SUV, a Chevrolet Tahoe, which may have contributed to Cortez's injuries and contributed to his death.
>    103. Defendant Walls acted with deliberate indifference to the constitutional rights of decedent and Plaintiffs without any legitimate law enforcement objective.
>    104. As a direct and proximate result of said Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives.
>    105. Plaintiffs loved Cortez, their natural son, and Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured both in mind and in body.
>    106. Plaintiffs have ongoing and continuous permanent damages and injuries, and as such are entitled to recovery of damages.

(Doc. 1 at 20-21).  In the current Motion, Officer Walls requests that the Court enter judgment for him on Count V, arguing that Plaintiffs failed to plead causation and that he is protected by official immunity (Docs. 22, 23, 30).

## II.  Legal Standard

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018) (citation omitted).  Ultimately, a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  In deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court "accept[s] all facts

4

pled by the nonmoving party as true and draw[s] all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (citations omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

### III.  Analysis

#### A.  Causation

"Under Missouri's wrongful death statute, the right to sue for wrongful death is conditioned on the fact that the decedent could have maintained an action for damages for the injuries sustained had he or she survived." *Selimanovic v. Finney*, 337 S.W.3d 30, 37 (Mo. Ct. App. 2011) (internal quotations omitted). "Thus, the elements of a wrongful death action will be identical to the elements of the underlying tort claim, with the significant differences that the wrongful death action entails proof of causation of the decedent's death, and recoverable damages are those specified in the statute." 34 Mo. Prac., Personal Injury and Torts Handbook, § 55:2 (2022 ed.).

With respect to the element of causation in a wrongful death action, a plaintiff must prove that, "but for" the defendant's actions or omissions, the decedent would not have died. *Watson v. Tenet Healthsystem SL, Inc.*, 304 S.W.3d 236, 240 (Mo. Ct. App. 2009); *Baker v. Guzon*, 950 S.W.2d 635, 644 (Mo. Ct. App. 1997). In other words, a plaintiff must show that the defendant's conduct directly caused or directly contributed to cause the decedent's death. *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 306 (Mo. banc 2011). The defendant's conduct need not be the sole cause of the decedent's death, but simply a cause or a contributing cause. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 339 (Mo. Ct. App. 2000).

5

As to causation, Count V alleges that "Defendant Walls, as partner to Defendant Roethlisberger, and as a police officer on site and present while Defendant Roethlisberger fired shots at Cortez, had a duty to intervene to prevent Defendant Roethlisberger from depriving Cortez of his rights"; "Defendant Walls struck Cortez with his St. Louis City Police SUV, a Chevrolet Tahoe, which may have contributed to Cortez's injuries and contributed to his death"; and "[a]s a direct and proximate result of said Defendant Walls's acts, omissions, and deliberate indifference to Plaintiffs' constitutional right to their familial relationship with their son, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives" (Doc. 1 at 21).

Officer Walls argues that, because the Complaint repeatedly alleges that Officer Roethlisberger shot and killed Cortez, it is not plausible that Officer Walls directly caused or directly contributed to cause Cortez's death (Doc. 23 at 3). Officer Walls further argues that Plaintiffs failed to plead that Cortez would have survived but for Officer Walls striking him with the SUV, or that Cortez's chance of death was thereby increased (Doc. 30 at 2). Officer Walls argues that the phrasing "may have contributed to Cortez's injuries and contributed to his death" is too speculative (*id.* at 2-3). Plaintiffs counter that it is plausible that the striking injured Cortez and rendered him unable to survive the shots fired by Officer Roethlisberger (Doc. 27 at 3).

The Court agrees that Plaintiffs' pleading of Count V could be drafted with more precision. As relevant, the Complaint alleges as follows. While attempting to cross the street, Cortez was struck and "knocked down" by the drivers' side bumper of the SUV Officer Walls was driving (Doc. 1 at 7). There was an "area of damage" to the SUV, but the impact to the side of the SUV was "miniscule" (*id.*). Cortez did not suffer the kind of "significant injuries" that would have resulted from him being thrown 10 to 15 feet (*id.*). After being hit, Cortez ran down

6

an alleyway (*id.*). Officer Roethlisberger continued to pursue him and ultimately fired eleven shots, with multiple "kill shots" to Cortez's face (*id.* at 8-9). The only factual allegation that the striking in any way caused or contributed to cause Cortez's death is the speculative statement contained in the body of Count V: "Defendant Walls struck Cortez with his St. Louis City Police SUV, a Chevrolet Tahoe, which *may have* contributed to Cortez's injuries and contributed to his death" (*id.* at 21) (emphasis added).

If Plaintiffs' only theory on Count V related to the striking, the Court might be inclined to grant Officer Walls' Motion. However, Plaintiffs also allege that Officer Walls "had a duty to intervene to prevent Defendant Roethlisberger from depriving Cortez of his rights" and "[a]s a direct and proximate result of said Defendant Walls's … omissions … Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of decedent, and will continue to be so deprived for the remainder of their natural lives" (Doc. 1 at 21). *See Cheeks v. Belmar*, No. 4:18-CV-2091-SEP, 2020 WL 5569982, at *23 (E.D. Mo. Sept. 17, 2020) ("A police officer may be liable for failure to intervene to prevent the use of excessive force when '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'") (quoting *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009) (citation omitted)). Officer Walls makes no mention of this theory in his briefing.

"A grant of a motion under Federal Rule 12(c) for judgment on the pleadings constitutes a final judgment on the merits of the controversy within the meaning of Rule 54." 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1372 (3d ed. Apr. 2023 Update). The Court will not enter final judgment for Officer Walls on Count V when he failed to address the alternate "duty to intervene" theory pled by Plaintiffs.

7

### B. Official Immunity

The official immunity doctrine is a "judicially-created doctrine [that] protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). The doctrine is applicable to wrongful death actions in Missouri. *See id*. "Even a discretionary act, however, will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption." *Id*. "[O]fficial immunity is only available to a public official when he exercises legitimate authority in a discretionary manner." *State v. Edwards*, 337 S.W.3d 118, 121 (Mo. Ct. App. 2011).

Officer Walls argues that he is entitled to judgment on Count V on the basis of official immunity because his actions and those of Officer Roethlisberger were discretionary ones performed in the course of their official duties in response to an emergency (Doc. 23 at 4-6; Doc. 30 at 3-8). Plaintiffs counter that there was no emergency (Doc. 27 at 4-7).

In deciding Officer Walls' Motion, the Court must accept all facts pled by Plaintiffs as true and draws all reasonable inferences from the facts in favor of Plaintiffs. *See Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004). As relevant, the Complaint alleges as follows. The encounter began when Officer Roethlisberger yelled "Put your junk away," exited the St. Louis City Police SUV, and started to run at Cortez (Doc. 1 at 6-7). Officer Roethlisberger did not identify himself or make any other statements (*id.* at 6). He purported to conduct a "pedestrian check" without sufficient legal basis (*id.*). Cortez did not hear any commands such as "stop" or "I'm a police officer" (*id.*). Cortez responded to this unknown assailant by running (*id.*). When Officer Roethlisberger, in pursuit, grabbed Cortez at the fence, Officer Roethlisberger still had not identified himself or given any commands to Cortez and had not asked Cortez to stop or otherwise even identified himself as a police officer (*id.*).

Officer Walls and an unidentified officer who was a passenger in the SUV claimed that, at the time of the striking, they saw that Cortez had a gun, and Officer Roethlisberger claimed that Cortez pointed a gun at him prior to Officer Roethlisberger shooting Cortez (*id.* at 7). The Complaint repeatedly indicates that those and other claims by the officers were false. Subsequent investigations showed that Officer Walls could not have seen Cortez or whether he had a gun and that Officer Roethlisberger could not have seen Cortez pointing a gun (*id.* at 7-8). After Cortez was shot, there is video of Officer Roethlisberger and another officer throwing a heavy object between them (*id.* at 10). A pistol was found covered in blood (*id.*). There was blood on the back of the magazine and on top of a bullet, indicating the gun was not loaded and in firing position, as Officer Roethlisberger claimed, when it was covered in blood (*id.*). Cortez had no blood on his hands and his finger was shot and severed with no damage to the gun (*id.* at 9-10). The blood was smeared after Cortez was shot (*id.* at 11). The gun was not registered to Cortez and his fingerprints were not lifted from it (*id.* at 10). In addition, video from the gas station where the encounter began showed no gun protruding from Cortez's bag and his bag was too small to conceal a full-sized gun with an extended magazine (*id.* at 5, 11). Officer Roethlisberger did not fear for his life and was the aggressor (*id.* at 9). The Complaint further creates the inference that Cortez may have been targeted because he previously settled a case with the City over a 2014 assault by police. *See id.* at 5.

Count V alleges that Officer Walls' conduct shocks the conscience and that he acted with deliberate indifference to the constitutional rights of decedent and Plaintiffs and without any legitimate law enforcement objective (*id.* at 20-21).

The Court agrees with Plaintiffs that, accepting all facts pled by Plaintiffs as true and drawing all reasonable inferences in Plaintiffs' favor, Officers Walls and Roethlisberger were not responding to an emergency. Officer Walls mischaracterizes the Complaint when he states that

9

"Plaintiffs admit that Walls was able to see an extended magazine protruding from Cortez's 'man bag'" and "based on the pleadings, it is clear that Walls knows that his partner, Roethlisberger, is chasing a fleeing suspect and that the fleeing suspect has a gun" (Doc. 30 at 5). Officer Walls relies on *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760 (Mo. banc 2006), and *Conway v. St. Louis Cnty.*, 254 S.W.3d 159 (Mo. Ct. App. 2008) (Doc. 30 at 4). *Davis* involved a motorist whose vehicle was struck by an airport police vehicle responding to an "officer-in-need-of-aid" emergency call. 193 S.W.3d at 762-63. *Conway* involved officers who responded to a 911 call of threatened suicide, kicked open the door to the individual's room when he refused to come out, and fatally shot him when he moved toward them swinging a sword, having threatened to stab them if they entered the room. 254 S.W.3d at 162-65. *Davis* and *Conway* are distinguishable in that both cases involved police responding to an emergency call, as well as, in *Conway*, an individual moving toward officers swinging a sword.

Here, Plaintiffs allege that the officers had no legally sufficient basis to conduct a purported "pedestrian check" on Cortez and no legitimate law enforcement objective in using force against him, and that Officer Roethlisberger was the assailant and aggressor. They further allege facts indicating not only that Officers Walls and Roethlisberger falsely claimed that Cortez had a gun, but also that Officer Roethlisberger planted a gun at the scene. On those facts, Officer Walls arguably acted outside of his legitimate authority, *Edwards*, 337 S.W.3d at 121, or in a manner that was willfully wrong or with malice or corruption, *Southers*, 263 S.W.3d at 610. While the Court does not comment on the truth of Plaintiffs' allegations, Officer Walls is not entitled to judgment on Count V on the basis of official immunity at this stage.

## IV. Conclusion

**IT IS HEREBY ORDERED** that Defendant Martinous Walls' Motion for Judgment on the Pleadings on Count V (Doc. 22) is **DENIED**.

Dated this 20th day of June, 2023.

                                                /s/ Noelle C. Collins
                                                NOELLE C. COLLINS
                                                UNITED STATES MAGISTRATE JUDGE