## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| TAMMY BUFFORD and ANTOINE BUFFORD, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 4:22-CV-01319-NCC |
| CITY OF ST. LOUIS, MISSOURI, LT. COL. MICHAEL SACK, POLICE OFFICER LUCAS ROETHLISBERGER, and POLICE OFFICER MARTINOUS WALLS, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Michael Sack's Motion for Judgment on the Pleadings on Counts XII, XIII, XIV, XV, and XVI (Doc. 34). The Motion is fully briefed and ready for disposition (Docs. 35, 36). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 17). For the following reasons, the Motion will be **DENIED**.

### I. Background

On December 8, 2022, Plaintiffs Tammy Bufford and Antoine Bufford ("Plaintiffs") filed this action against Defendants City of St. Louis, Missouri ("City"), Police Commissioner Michael Sack[1] ("Commissioner Sack") in his official capacity,[2] Police Officer Lucas Roethlisberger ("Officer Roethlisberger") in his individual and official capacities, and Police

---

[1] Plaintiffs initially referred to Commissioner Sack as Lieutenant Colonel Michael Slack (Doc. 1). The parties later submitted a joint correction indicating that the correct spelling is Lieutenant Colonel Michael Sack (Doc. 20).

[2] His predecessor John Hayden was Commissioner at the time of Cortez's death.

Officer Martinous Walls ("Officer Walls") in his individual and official capacities, related to the death of their son Cortez Demarko Bufford ("Cortez") (Doc. 1).

In summary, Plaintiffs' Complaint alleges as follows.  Cortez previously settled a claim against the City related to an assault by eight police officers on April 10, 2014 (Doc. 1 at 5).  On December 12, 2019, Cortez, a 24-year-old African American male, was at a BP gas station, 504 Bates Street, with a friend (*id.* at 2, 5).  BP security footage shows no gun is visible in Cortez's bag (*id.* at 5).  Cortez was smoking a cigarette at the side of the gas station when a St. Louis City Police Chevy Tahoe SUV ("SUV") pulled up, driven by Officer Walls, with Officer Roethlisberger as a passenger (*id.* at 6-7).  Officer Roethlisberger yelled "Put your junk away," exited the SUV, and started to run at Cortez (*id.* at 6).  Officer Roethlisberger did not identify himself or tell Cortez to stop (*id.* at 6).  Cortez ran (*id.*).  Officer Roethlisberger ran after Cortez and drew his sidearm (*id.*).  Cortez's friend yelled that Officer Roethlisberger "better not shoot him" and Officer Roethlisberger holstered his sidearm (*id.*).  Cortez turned down an alleyway and stopped at a fence (*id.*).  Officer Roethlisberger grabbed him (he still had not identified himself or told Cortez to stop) (*id.*).  Cortez managed to escape (*id.* at 7).

Cortez ran back toward the street (*id.*).  As he tried to cross Bates Street, Officer Walls hit him with the driver's side bumper of the SUV and knocked him down (*id.*).  An unidentified officer who was a passenger radioed that Cortez had a gun (*id.*).  Officer Walls and the unidentified officer claimed in their statements that they could see an extended magazine protruding from Cortez's bag, but subsequent investigations showed that would not have been possible for the driver, Officer Walls (*id.*).

After being hit, Cortez ran down another alleyway, between 533 and 535 Bates Street (*id.*).  Officer Roethlisberger claimed in his statement that he was at the mouth of the alleyway, but the shell casings show he pursued Cortez into the alleyway (*id.* at 8).  Officer Roethlisberger

2

claimed that Cortez pointed a black pistol at him (*id.*).  Subsequent investigations showed that Officer Roethlisberger could not have seen Cortez threaten him due to the lighting and visibility in the alleyway (*id.* at 8-9).

Officer Roethlisberger fired his sidearm twice, paused, and then walked down the alleyway firing approximately nine shots (*id.* at 9).  Two shots struck Cortez in the back and the remaining shots struck him in the front, with multiple "kill shots" to the face (*id.*).

There is video of Officer Roethlisberger and another officer throwing a heavy object between them (*id.* at 10).  A pistol was found covered in blood (*id.*).  There was blood on the back of the magazine and on top of a bullet, indicating that the gun was not loaded and in firing position as Officer Roethlisberger had claimed (*id.*).  Cortez's finger was shot and severed with no damage to the gun (*id.* at 9-10).  Cortez had no blood on his hands, indicating that the blood was smeared on the pistol after Cortez was shot (*id.* at 9, 11).  The gun was not registered to Cortez and his fingerprints were not lifted from it (*id.* at 10).  And Cortez's bag was too small to conceal a full-sized gun with an extended magazine (*id.* at 11).

Plaintiffs allege the following five claims against Commissioner Sack in his official capacity as the Commissioner of the St. Louis City Police Department:  (1) Count XII: violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983 and 1988, excessive force; (2) Count XIII: violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1983 and 1988, failure to properly hire, train, supervise, retain, and conduct a fair and impartial investigation; (3) Count XIV: vicarious liability for the acts committed by Officers Roethlisberger and Walls within the course and scope of their employment, and the wrongful death of Cortez Bufford pursuant to RSMo § 537.080.1(1); (4) Count XV: vicarious liability for the acts committed by City of St. Louis Police Officers within the course and scope of their employment, and liability to Plaintiffs

pursuant to Mo. Rev. Stat. § 537.020 *et. seq.*, the survival action; and (5) Count XVI: negligence, pursuant to Mo. Rev. Stat. §§ 537.020, 537.030, and 537.600 (Doc. 1 at 38-50).  These five causes of action were separately brought against the City in Counts VII, VIII, IX, X, and XI (Doc. 1 at 25-38).

In the current Motion, Commissioner Sack requests that the Court enter judgment for him on Counts XII, XIII, XIV, XV, and XVI, and dismiss him from this case, arguing that he is named as a defendant solely in his official capacity, and therefore, the City is the appropriate defendant, and the claims against him are duplicative (Docs. 34, 35).  Based on this premise, he argues Plaintiffs failed to state a claim against him upon which relief can be granted (*id.*).

## II.  Legal Standard

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018) (citation omitted).  Ultimately, a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  In deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court "accept[s] all facts pled by the nonmoving party as true and draw[s] all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (citations omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

## III.  Analysis

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity," and a court properly dismisses official capacity claims that are redundant to the claims against the employing governmental entity.  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  *See also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (a person suing "public employees in their official, rather than individual, capacities sues only the public employee . . . .").  Generally, suits against individuals in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978).

In the Complaint, the five Counts brought against Commissioner Sack in his official capacity are identical to the five Counts brought against the City (Doc. 1 at 25-50).  Plaintiffs allege the following with respect to Commissioner Sack and the City. "The Police Chief maintained general supervision of Defendants Roethlisberger and Walls and was also responsible for hiring, training, and retention, along with Defendant City.  The office of Police Chief was held by John Hayden during the events described herein and is now occupied by Defendant Michael Sack."  (Doc. 1 at 3).  Further, Plaintiffs allege that:

> Defendant City at all times relevant herein was a duly chartered municipality of Missouri.  The St. Louis Metropolitan Police Department is an official division of Defendant City.  At all relevant times herein, Defendant City employed John Hayden, and Defendants Roethlisberger, and Walls, including at the time Defendant Roethlisberger shot and killed Cortez.

> Defendant Sack is being sued in his official capacity as Police Commissioner.  At all times relevant herein, his predecessor John Hayden, was acting within the course and scope of his employment with Defendant City and was acting under color of law as the supervisor of Defendant City's police officers, including Defendants Roethlisberger and Walls.  The Defendant Police Commissioner, as noted above, was responsible for and had express and implied authority to make policies for Defendant City and also had the authority to hire,

train, supervise, discipline, and effect the retention determination(s) in regard to Defendant City's law enforcement officers.  Further, Defendant Sack is a resident of Missouri.

(Doc. 1 at 3-4 ¶¶ 2-3).

Commissioner Sack relies on *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010), arguing that it is proper for the Court to dismiss the claims against him in his official capacity because those claims are duplicative of the claims asserted against the City (Doc. 35 at 3).  He further argues that Plaintiffs' only available remedy through the official capacity claims against him is injunctive relief, which would be the same remedy available from the City, also rendering the claims duplicative, and worthy of dismissal (i*d*.).

Plaintiffs counter that they can bring their claims against Commissioner Sack in his official capacity and the City because the two defendants are not identical, and alternatively, duplicative claims are permitted at this stage (Doc. 36 at 2-3).  Plaintiffs rely on *Johnson v. Bd. of Police Comm'rs*, 370 F.Supp.2d 892 (E.D. Mo. 2005), in which the Court determined that dismissal of duplicitous claims at this stage of the proceedings is not required (*id.* at 5).  Specifically, Plaintiffs quote the following excerpt from *Johnson*:

> Defendant Warnecke seeks to dismiss Plaintiff's claim against her in her official capacity because it is redundant and unnecessary given that Defendant Warnecke's employer, Defendant Police Board, is also a named defendant.  However, Defendant Warnecke cites no authority supporting dismissal on this ground and the Court has found no authority mandating dismissal for this reason alone.  While suing Defendant Warnecke in her official capacity may be duplicitous because such an action is to be treated as a suit against her employer, this fact alone does not require dismissal at this stage in the proceeding.  Thus the request for dismissal of the claim against Defendant Warnecke in her official capacity will be denied.

(*id.* quoting *Johnson*, 370 F.Supp.2d at 898).

Plaintiffs also counter that it cannot be said with certainty that the Police Commissioner is a "direct" employee of the City of St. Louis, that there is a history of the City of St. Louis and the St. Louis Metropolitan Police Department "being considered separated," as well as "both a history of and recent discord between the St. Louis Metropolitan Police Department and the City of St. Louis as to authority and responsibility and each may be covered by separate insurance policies or governing bodies or policies" (Doc. 36 at 4).  Plaintiffs rebut Commissioner Sack's argument that any claims against him are also claims against the City because Commissioner Sack "has not provided any specific factual allegations regarding the structure or hierarchy of the St. Louis Metropolitan Police Department as it relates to the City of St. Louis" (*id.* at 5). Plaintiffs contend that "[q]uestions of liability, damages, and coverage persist" (*id.*).  Finally, Plaintiffs note that the *Veatch* case relied on by Commissioner Sack, relates to the propriety of dismissal of redundant claims against a government officer in his official capacity at the summary judgment stage, not pursuant to a motion for judgment on the pleadings or a motion to dismiss (*id.*).

Commissioner Sack did not file a reply disputing Plaintiffs' response.  The Court pauses, however, because Plaintiffs rely on facts that were not explicitly alleged in their Complaint. Notably lacking are any specific allegations of "separateness" and discord, or uncertainty with respect to Commissioner Sack's "direct" employment, or the authority, responsibility, hierarchy, or insurance policies that Plaintiffs highlight in their response.  "In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'"  *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citation omitted)).  In other words, materials outside the pleadings generally must be ignored, "but [the court] may consider some materials that are part of the public record

or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citations and quotations omitted).

Plaintiffs arguments do not definitively contradict the Complaint.  Plaintiffs brought claims against Commissioner Sack and the City separately, presumably for the very reason that it believed them to be separately suable entities, not by mere accident or ignorance of the law. Additionally, Plaintiffs originally alleged that the City employed Commissioner Sack, and defined some of his roles, but noted that he did so "along with Defendant City" (Doc. 1 at 3-4). The current allegations of separate governing bodies or policies, or separate insurance policies, do not contradict the pleadings in the complaint, and may be clarified through discovery.

Ultimately, the Court need not determine whether it can appropriately consider the Plaintiffs' current assertions as within or outside the scope of the pleadings, as they are irrelevant to the decision on this motion.[3]  The Court is not required to dismiss Commissioner Sack at this stage, solely on the basis that the claims against him are only in his official capacity and may be duplicitous to those against the City.  *See Johnson*, 370 F.Supp.2d 892 at 896.   As in *Johnson*, Commissioner Sack does not cite any authority mandating dismissal at this stage of the proceeding, where the only reason provided is that the claim is redundant and unnecessary because the defendant's employee is named[4] (*id*.).  "A grant of a motion under Federal Rule

---

[3] Generally, when matters outside the pleadings are presented to and not excluded by the court, the court must convert a motion for judgment on the pleadings to a motion for summary judgment. *See Stahl v. U.S. Dept. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).  "However, the court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Id.* at 701 (internal quotation omitted).

[4] Commissioner Sack relies on the *Veatch* case to support his request for dismissal.  In *Veatch*, the defendant was named in his official capacity only and the claims against him were properly dismissed as redundant against the claims against the City, but said dismissal was at the summary judgment stage of the proceedings.  627 F.3d at 1257.

12(c) for judgment on the pleadings constitutes a final judgment on the merits of the controversy within the meaning of Rule 54." 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1372 (3d ed. Apr. 2023 Update).  The Court will not enter final judgment for Commissioner Sack on Counts XII – XVI, solely on the basis of potential duplicitous claims, at this time.

### IV. Conclusion

**IT IS HEREBY ORDERED** that Commissioner Michael Sack's Motion for Judgment on the Pleadings on (Doc. 34) is **DENIED**.

Dated this 25th day of March, 2024.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE
